**SPINNER v WATERWAYS FUEL & DOCK COMPANY**

Ohio Appeals, 1st Dist, Hamilton Co

No 6060. Decided Jan 12, 1942

Clark & Robinson, Cincinnati, for appellant.
. Alfred Pfau, Cincinnati, for appellee.

## OPINION

By MATTHEWS, PJ.

· The question presented by this appeal is whether the plaintiff was employed by the defendant as a seaman within the meaning of the exception contained in the Fair Labor Standards Act of Congress. (52 Stat. 1060, 29 U. S. C. A. 201, et seq.). The Act imposes limitations upon the power of employers and employees to contract as to wages and hours of service and establishes minimum wages and maximum hours in favor of employees engaged in interstate commerce, or in the production of goods for commerce, but by §213 expressly excepts from the operation of the Act "Any employee employed as a seaman".

· The plaintiff was employed as a watchman to guard a digger boat. This boat is equipped with a boiler, an engine, a crane operated by the engine used in unloading coal from other vessels or barges, a winch and ciphon, also operated by the engine. His duties were to keep the steam up in the boiler during the night, put lanterns on coal barges anchored to it, and, generally, to protect the property under his charge. This digger boat was anchored to the shore of the Ohio River by means of cables and it was a part of the duty of the plaintiff to manipulate these cables by means of the winch and engine as the stage of the river rose or fell, so as to protect the boat. In doing this the boat would be moved not more than 75 feet. At one time it was moved not to exceed 200 feet in order to assist the United State Government in transferring some coal, but the plaintiff took no part in this operation. It was also a part of the plaintiff's duty to ciphon water from the boat and barges anchored to it. The engine was used in this process. It was also a part of his duty to tie and untie coal barges to the digger-boat as occasion arose.

The digger-boat with its equipment was designed to be, and was used in connection with a hopper-float in loading and unloading coal from barges.

The plaintiff was a night-watchman and it was only rarely that the digger-boat was in operation while he was present, and when so in operation it was no part of his duty to assist. He had no governmental license of any sort.

It does not clearly appear when the defendant acquired this equipment, but it does appear that the plaintiff was employed to guard it for more than six months. Except as already indicated, it had never been moved from its moorings during all the time the defendant owned it. It was not equipped with any appliances for navigation.

. There is no doubt that in the operation of this crane and hopper in loading and unloading coal barges, those so employed were frequently and perhaps usually engaged in interstate commerce and were within the power of

Congress to regulate such commerce.

As the Ohio River is a navigable stream of the United States, their activities may have come within the admiralty jurisdiction of the United States. Power to act clearly existed. So the sole problem is to determine the extent and meaning of the exercise by the Congress of an undoubted power.

The plaintiff's activities brought him within the operation of the Fair Labor Standards Act unless he was a seaman and, therefore, fell within the express exception.

Specifically, our problem is to determine, if we can, the intent of Congress in the use of the word "seaman" in §213 of the Fair Labor Standards Act.

The lexicon or common law definition of a seaman is: "A sailor; a mariner; one whose business is navigation.—The term seaman in its most enlarged sense, includes the captain as well as the other persons of the crew, in a more confined signification, it extends only to the common sailors." 2 Bouvier's Law Dictionary (Lawlis 3rd ed.) 3022.

According to this definition the test of a seaman is the nature of his work. If he is engaged in conducting a vessel or ship over water, he is a seaman while so doing. Therefore, the ship or vessel must be in motion, or capable of motion, and regarded legally as in motion, in order that those employed in its use may be regarded as seasmen. This does not mean that such a person while otherwise employed is entitled to the rights and subject to the duties and disabilities of a seaman.

A night watchman is not necessarily a seaman. It depends on his duties as a watchman. If his duties pertain to a ship or vessel used or capable of use in navigation, he is a seaman within the lexicon definition of that term.

It is manifest that without a ship or vessel there can be no seaman. In 1 Benedict on Admiralty (6th ed.) §53, p. 111 et seq., it is said:

"Under the name 'navis, ship', says Malynes. 'is all kind of shipping understood, and navigium, vessel, is a general word, many times used for any kind of navigation. So that it is not of any moment to describe the diversity of ships, as carracks, galleons, galleasses, gallies. centauries, ships of war, fly boats, busses, and all other kinds of ships and vessels.' Each nation has its mode of construction, rigging and navigation, and its peculiar kind of craft; but all are ships and vessels that are manned by a master and crew and are devoted to the purpose of transportation and commerce, whether in the fisheries. or in passenger or pleasure service or in trade. A scow, a lighter, a ferry-boat, and probably a raft or timber ship, under certain circumstances, would be held to be a ship or vessel and subject to the same maritime law as other vessels. It is not the form, the construction, the rig, the equipment, or the means of propulsion that establishes the jurisdiction, but the purpose and business of the craft, as an instrument of naval transportation."

The statutory definition of vessel makes it include "every description of water-craft or other artificial contrivance used or capable of being used as a means of transportation on water." 1 U. S. C. 3 R. S. §3 (1872).

So we finally arrive at the crux of the question raised by this record, and that is, whether this equipment (digger boat and hopper) anchored to the shore of the Ohio River was in legal contemplation a ship or vessel, that is, a contrivance used or capable of being used as a means of transportation on water.

This test has been applied to crafts of many names and descriptions. The result has depended on the facts and circumstances. The cases are collected in 1 Benedict on Admiralty (6th ed.) at page 112, et seq. It would serve no, purpose to discuss these cases. The test has been uniform. Skill in applying it may not have been. Most of the cases were decided by inferior federal courts. In 1 Benedict on Admiralty (6th ed.) at 112, the author, after re-

ferring to certain cases, holding certain watercraft to be vessels, says that they were probably overruled by Chero-Cola Bottling Co. v Evansville & B. G. Co., 271 U. S. 19. That case related to a wharf boat that had been anchored at Hopefield, Arkansas, from 1884 to 1901, when it was towed to Madison, Indiana, where it was overhauled, then towed to Louisville, Kentucky, where it was used. and then in 1911, it was towed to Madison, Indiana, for repairs again, and then towed to Evansville, Indiana. Each winter it was towed to a harbor on the Green River to protect it from ice. Appellant acquired it in 1915. While this wharfboat was in use at Evansville, it was secured to the shore by cables and remained at the same point except when moved to conform to the stage of the river. Other details appear in the report. As its name indicates it was used principally to transfer freight from boats to shore and vice versa, and also for storage. The wharf-boat sank and the appellee's merchandise thereon was damaged. The action was to limit the owner's liability according to admiralty law. The decision depended upon whether the wharf-boat was a vessel. The court held it was not a vessel, and that the owner was not entitled to have its liability limited. At page 22 the court said.

"The only question presented is whether appellant's wharf-boat was a 'vessel' at the time it sank. It was an aid to river traffic, but it was not used to carry freight from one place to another. It was not practically capable 'of being used as a means of transportation. It served at Evansville as an office, warehouse and wharf, and was not taken from place to place. The connections with the water, electric light and telephone systems of the city evidence a permanent location. It performed no function that might not have been performed as well by an appropriate structure on the land and by a floating stage or platform permanently attached to the land. It did not encounter perils of navigation to which craft used for transportation are exposed. There appears to be no reason for the application of the rule of limited liability. Many cases, involving a determination of what constitutes a vessel within the purview of the statute have been before the courts; but no decision has been cited,. and we have found none, that supports the contention that this wharfboat was a vessel. Cf. Cope v Valette Dry Dock Co., 119 U. S. 625, 629; The Robert W. Parsons, 191 U. S. 17, 30; Ruddiman v A. Scow Platform, 38 Fed. 158; Patton-Tully Transportation Co. v Turner, 269 Fed. 334, 337."

What the court said in that case is equally pertinent, mutatis mutandis, to this digger-boat and hopper.

The plaintiff was not engaged in navigating this digger-boat and hopper. They were not navigated by anyone and were never intended for any such use. The navigation was done by defendant's customers who brought their barges there to avail themselves of the equipment for loading, unloading, and transferring of the cargoes.

The plaintiff lived on the opposite shore and usually reached his place of employment by rowing across in his own boat. He also testified that he had worked many years on or about the Ohio River. He was, in a colloquial sense, a river man. But those facts are of no importance in determining whether he was employed as a seaman by the defendant. That depended upon the facts and circumstances of his employment and the nature of his work— not upon his prior activities or his choice of the means of reaching his place of employment.

Our conclusion is that the plaintiff was not employed as a seaman and, therefore. that he is entitled to the benefits of the Fair Labor Standards Act.

The judgment is reversed, and as it appears from the record that the plaintiff is entitled to final judgment, such

judgment will be entered by this court and remanded for execution.

HAMILTON & ROSS, JJ., concur.