**HELENA GLENDALE FERRY CO. v. WALLING, Administrator of Wage and Hour Division, United States Department of Labor.**

**WALLING, Administrator of the Wage and Hour Division, United States Department of Labor, v. JOHNSON.**

Nos. 12318, 12319.

Circuit Court of Appeals, Eighth Circuit.

Dec. 23, 1942.

Walter T. Nolte, Atty., Office of Solicitor, United States Department of Labor, of Washington, D. C. (Warner W. Gardner, Sol., and Mortimer B. Wolfe, Asst. Sol., both of Washington, D. C., Llewellyn S. Duke, Regional Atty., of Dallas, Tex., and Edward J. Fruchtman and George W. Crockett, Jr., Attorneys, United States Department of Labor, both of Washington, D. C., on the brief) for L. Metcalfe Walling, Administrator.

A. M. Coates, of Helena, Ark. (Douglas S. Heslep, of Helena, Ark., on the brief), for Helena Glendale Ferry Co. and another.

Before STONE, SANBORN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The Helena Glendale Ferry Company, a corporation, operates a ferry across the Mississippi River from Helena, in Arkansas, to a point on the opposite shore in the State of Mississippi, for the transportation of passengers and freight in interstate commerce. A. C. Johnson is the owner of

all but two shares of the capital stock in the ferry company and is its general manager. This suit was brought by the Administrator of the Wage and Hour Division of the United States Department of Labor to enjoin the ferry company and Johnson from alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., in respect to the requirements of the Act concerning minimum wages and maximum hours of employees and the keeping and preservation of records in conformity with regulations of the Administrator promulgated by him under the authority of the Act. A. C. Johnson was joined as a defendant on the allegation that he was an employer within § 3(d) of the Act, defining an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."

The ferry company and Johnson defended on the ground that all of the employees of the company were exempt from the provisions of the act under § 13(a)(3) because they were seamen and, with respect to two of the company's employees, on the further ground that they were exempt because they were executive and administrative employees within the meaning of § 13(a)(1) of the Act.

The district court dismissed the suit as against defendant A. C. Johnson; found that the ferry company had violated the Act with respect to three persons who, in the opinion of the court, were employees of the ferry company not within the exemptions claimed; and permanently enjoined the ferry company from further violations of the Act in the respects charged in the complaint.

The ferry company has appealed on the grounds that the court erred in holding that two of the employees, concerning whom the injunction was granted, were not executive nor administrative employees within the meaning of § 13(a)(1) of the Act, or were not seamen within the meaning of § 13(a)(3) of the Act; and on the further ground that the third person, with respect to whom violations of the Act were found by the court, was not an employee of the company. The Administrator appeals from the order dismissing the suit as to A. C. Johnson, assigning as error the refusal of the court to hold that A. C. Johnson was an employer of the employees of the ferry company within the meaning of the Act.

All of the ferry company's employees are engaged in interstate commerce. Apparently all except three are seamen exempt from the provisions of the Act. The company did not comply with the minimum wage and maximum hours provision of the Act with respect to the three persons which the court found to be entitled to the protection of the Act. The required record of hours of labor and wages was not kept by the company.

The company operates three vessels in its ferry business. It maintains its office upon a floating barge adjacent to the Arkansas shore of the river at Helena. This floating barge or landing stage is attached to the shore by cables, enabling it to rise and fall with the rise and fall of the river. This arrangement is necessary because of frequent variations in the water level of the Mississippi, making it impossible to maintain on the river bank a permanent landing stage which at all stages of the river would be conveniently accessible to approach by the ferry boats. The purpose of the floating barge is to provide a feasible and convenient method for receiving and discharging passengers to and from the ferry boats at all stages of the river. The ferry company maintains on the barge an office for the transaction of business and waiting rooms for its passengers. The barge is connected with the shore by a movable bridge which may be raised or lowered with changes in the river stage, and is served by electric light and telephone connections from utility companies of the city of Helena.

The ferry company employs two young women in its office on the barge in question in the capacity of clerks or cashiers, and claims that they are either seamen or executive and administrative employees within the terms of the section of the Fair Labor Standards Act of 1938 which exempts employees engaged in such occupations from the operation of the Act. The duties of these young women are entirely clerical. They have no control whatever over the operation of the ferry boats nor over the crews nor over the other employees of the ferry company. They are occupied exclusively with the sale of tickets, collections of charges for passengers and freight and the issuance of receipts therefor, and the keeping of records of these transactions and of the payrolls of the company. One of them is on duty during the day and the other at night, and in the absence of A. C. Johnson, they are the only employees of the ferry company en-

gaged in its service upon the landing barge. When not on duty they live at their homes in Helena. They exercise no discretion in the administration of the affairs of the company.

The evidence also discloses that A. C. Johnson operates a cotton plantation on the Mississippi side of the river, where he employs one Marvin Johnson as foreman or farm superintendent. In this capacity Marvin Johnson receives wages of $18.00 per week, a residence on the farm, and one acre of land for use as a garden. He has charge of the machinery and livestock upon the farm, attending to the maintenance of the former and feeding and care of the latter. His duties require him to supervise the other labor employed in planting and harvesting the crops. He also operates the farm truck and tractors, hauling the cotton and wood from the farm to Helena, and supplies from Helena to the farm. The sole service that he performs exclusively for the ferry company consists in hauling a load of coal each day to the landing stage in Helena, and this is done usually on one of his return trips across the river to the farm. On the Mississippi side of the river he maintains the roads leading through the farm and in connection with this work he repairs that part of the road leading to the ferry on that side of the river, and keeps it in such condition as to enable passengers and freight to reach the ferry landing. On the Arkansas side he occasionally hauls a load of brick to be used for the same purpose on the bank of the river near the landing stage. This work is done as a part of his employment by A. C. Johnson, and he is not paid for it by the ferry company, nor is that company under any obligation to pay him.

██ That it was the intention of Congress to include within the protection of the Fair Labor Standards Act of 1938, every employee engaged in commerce or in production for commerce within the broad scope of those activities expressed in the Act, is no longer open to doubt. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 16; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 63 S.Ct. 125, 87 L.Ed. ——, decided November 9, 1942. The Act is remedial and must be given a liberal construction in accordance with its obvious intent and purpose. "We must assume that all employees in interstate commerce, so far as reasonably possible, should be made subject to the provisions of the Act." Fleming v. Hawkeye Pearl Button Co., supra [113 F.2d 56]. Those asserting in reference to any employee, an exemption under the Act, must establish the exemption as being both within the spirit and the letter of the statute. Bowie v. Gonzalez, supra. Since the statute is remedial, and by its terms includes every employer and every employee coming within the broad scope of its coverage, the section granting exemptions is to be construed strictly against those claiming them. Fleming v. Hawkeye Pearl Button Co., supra.

██ The section of the Act granting exemptions deals with employment of a character or with employees of a class to which application of the provisions of the Act for minimum wages and maximum hours is either impracticable or impossible, or with employees in occupations in which the conditions of labor are regulated by other statutes, or with employees the greater part of whose labor is in intrastate commerce. The intent of Congress not to exclude others is clearly apparent. The exemptions insisted on here are expressed as follows: "The provisions of §§ 6 and 7 [sections 206 and 207 of this title] shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional * * * capacity, or . * * * (3) any employee employed as a seaman; * * *." The reason underlying each exemption is readily apparent. Executive, administrative and professional workers are not usually employed at hourly wages nor is it feasible in the case of such employees to provide a fixed hourly rate of pay nor maximum hours of labor. According to universal acceptation, the word seaman denotes one whose duties "are maritime in character and rendered on a vessel * * * in navigable waters." Gale v. Union Bag & Paper Corp., 5 Cir., 116 F.2d 27. Seamen, in the sense in which the word is commonly used, are subject to all the hazards of navigation, and the limitation of their hours of labor, in view of the uncertainties and hazards of their occupation, is impracticable, if not at times impossible.

██ Neither Marvin Johnson nor the two young women employed on the landing stage of the ferry company are seamen within the meaning of the exemption granted in the statute. Nor are the last

mentioned employees engaged in an administrative or executive capacity. Wilkinson v. Noland Co., D.C., 40 F.Supp. 1009. It seems clear, however, that under the evidence in this case, Marvin Johnson was never an employee of the ferry company. The Act defines an employee as "any individual employed by an employer", and the word "employ" as used in the Act includes "to suffer or permit to work." But since the obvious purpose of the Act is to establish minimum wages and maximum hours, the words last quoted can not be interpreted to include as an employee one over whose hours of labor the employer has no control, and to whom the employer is under no obligation to pay wages. Bowman v. Pace Company, 5 Cir., 119 F.2d 858. The evidence wholly fails to disclose any right in the ferry company to require Marvin Johnson to work at any time nor any obligation upon the ferry company to pay him wages for the services which he occasionally renders it.

■ The ferry company, to sustain the exemption of the clerical employees as seamen, relies on cases defining seamen as used in other acts of Congress. But we are concerned only with the meaning of the word in the context of the Fair Labor Standards Act of 1938. United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. "What concerns us here and now is not the scope of the class of seamen at other times and in other contexts. Our concern is to define a meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained." Warner v. Goltra, 293 U.S. 155, 158, 55 S.Ct. 46, 48, 79 L.Ed. 254.

■ On the appeal of the Administrator it is contended that the injunction of the lower court should have issued against A. C. Johnson as well as against the Helena Glendale Ferry Company, because of the definition of employer contained in § 3(d) of the Act. The order of injunction made by the district court restrains the ferry company, its agents, servants, and employees, and all claiming to act upon its behalf, from violations of the minimum wage and maximum hours provision of the Act, and from failing to keep the records required by the regulations of the Administrator. A. C. Johnson, as an agent of the corporation, is subject to the commands of the injunction. It is difficult to see in what respect the Administrator is prejudiced in the enforcement of the Act by the court's refusal to include A. C. Johnson specifically as one of the parties enjoined. Moreover, A. C. Johnson is under no obligation personally to pay the wages of the employees of the ferry company. To include him within the injunction, as the Administrator demands, would in effect impose upon him an obligation in this respect which he has never assumed and which, to say the least, is not clearly required by the words of the Fair Labor Standards Act. Cases arising under the National Labor Relations Act, relied on by the Administrator, are not controlling. Warner v. Goltra, supra.

On the appeal of the ferry company in No. 12,318, the judgment of the district court, in so far as it holds that Marvin Johnson is an employee of the ferry company, is reversed, and in all other respects the judgment is affirmed. On the appeal of the Administrator in No. 12,319, the judgment of the district court is affirmed.