WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. GREAT LAKES DREDGE & DOCK CO.

No. 8648.

Circuit Court of Appeals, Seventh Circuit.
April 24, 1945.

Rehearing Denied June 9, 1945.

Harry A. White, Homer D. Dines, and Donovan Y. Erickson, all of Chicago, Ill., for appellant.

---

Douglas B. Maggs and Bessie Margolin, both of Washington, D. C., Kenneth P. Montgomery and Sidney A. Jones, Jr., both of Chicago, Ill., and Archibald Cox, Associate Sol., and Edward D. Friedman, Atty., United States Department of Labor, both of Washington, D. C., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

The Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (3), provides an exemption for "any employee employed as a *seaman*." The sole issue in the instant case was whether men employed on a dredge were "seamen." Judge Barnes answered the quere in the negative. He predicated his conclusion on the grounds that (a) the Act is remedial and calls for a liberal construction and (b) the factual situation required it.

The facts were largely stipulated. They are:

"None of the defendant's dredging employees are certificated as seamen by the United States Government; none have any United States Government license; none sign 'seaman's articles; and it is unnecessary for them to have special training for the dredging work. They are not required to have knowledge of laws of navigation. They pay for their meals when they eat aboard the dredge. When the dredge is being towed by the tug the captain of the tug takes care of all navigational signals. The dredges are not inspected by any agency of the United States Government.

\* \* \* \* \*

"Defendant \* \* \* constructs, repairs, alters, reconstructs and otherwise performs work on breakwaters, sea walls, docks, locks, levees, seaplane ramps and similar types of marine projects. Defendant also dredges, widens, clears, fills and otherwise performs work on channels in navigable inland waters and harbors \* \* \*. Typical of the type of dredging operations performed by the defendant is that work that it has done in deepening the harbors at Buffalo, New York; Cleveland, Ohio; Gary and Indiana Harbor, Indiana; and Detroit, Michigan; \* \* \*.

"Defendant operates three types of dredges commonly known as hydraulic dredges, dipper dredges and clamshell dredges.

"Defendant owns \* \* \* hydraulic dredges registered and documented \* \* \*. The dredges vary in gross tonnage from 559 to 1,832 tons. The machinery of said dredges are either driven by steam or Diesel electric plants. \* \* \*

"A dredge has no propellers or power wheels for controlling of its movements. \* \* \*

"Dredges are worked by crew members in 8 hour shifts. The hydraulic dredges owned by the defendant carry on a normal 8 hour operation crews varying from 8 to 13 men. The normal complement of a dredge operating on an 8 hour basis consists of a captain, operator, chief engineer, deck foreman, watch engineer, one or more oilers, a fireman on steam operated and an electrician on Diesel electric operated dredges, deckhands, a cook and one or more mess boys and porters. \* \* \* Some dredges carry accommodations for feeding and sleeping the crew aboard the dredge, and crews sometime sleep and eat aboard the dredges."

The parties also covered, by stipulation, the respective tasks of the various workers on a dredge.

In addition, oral testimony was adduced, of captains, deck hands, oilers, scowmen, fireman, dredge operator, the officers of the union, and officials of the defendant company.

The men testified as to their tasks when a dredging operation was in progress, such as oiling the machinery, managing the tow ropes, tending the pumps and the boilers, tending the scows which are ladened with the debris dredged. If the job were close to Chicago the men went home nights; if it were away from their home, they stayed on board the dredge for both meals and lodging. The dredges were completely outfitted for such accommodations, having a galley, dining room and state rooms (as disclosed by photographs of the dredges in evidence). The men paid for their board.

The dredges had no power of self locomotion, and were able to shift themselves but a few feet (ten or fifteen) for purpose of changing the location of dredging. Tugs were used to move the dredges. The dredges did have power units for the purpose of operating the dippers, either steam or hydraulic.

The parties "agreed that the employees are engaged in commerce; that the work done by the employees constitutes interstate commerce, and that they are improving and working on instrumentalities of interstate commerce, and there is no dispute

but that the employees were not paid time and a half for overtime."

If the employees were "seamen" within the meaning of this Act, then the decree must be reversed.

The decision of Judge Barnes is opposed by a decision in Bolan v. Bay State Dredging & Contracting Co., D.C., 48 F. Supp. 266. Other courts, too, have considered the correct definition of the word "seamen." *

An Administrative Interpretation by the Administrator, for the guidance of the administration of the Act, provides:

"An employee will ordinarily be regarded as 'employed as a seaman' if he performs, as master or subject to authority, * * of the master * * service which is rendered primarily as an aid in the operation of such vessel as a *means of transportation* * *. * *

"The exemption does not extend to employees working aboard vessels whose service is not rendered primarily as an aid in the operation of the vessel as a means of transportation. Thus employees on floating equipment * * and employees engaged in dredging operations or in the digging or processing of sand, gravel, or other materials are not employed as 'seamen.' "
(This interpretation was issued July, 1939, and amended in 1943.)

In the Hearings before the Joint Congressional Committees, a legislative representative of the National Maritime Union appeared and discussed the status of seamen. He pointed out that the Merchant Marine Act of 1936 provided that the Maritime Commission have jurisdiction of wage conditions "in ocean going shipping * *" and to incorporate in contracts minimum wage scales "for all officers and crews employed on all types of vessels receiving an *operating differential subsidy.*" He wanted to remain under the jurisdiction of the Maritime Commission and yet not lose any possible advantages there might be under the new Act.

Our conclusion is in accord with that of Judge Barnes. The seamen described in said exception did not include workers on a dredge.

We realize that the word "seamen" has been construed in other connections, and such constructions have comprehended dredge workers and related tasks. But, our guide, we think, is to be found in the opinion written in South Chicago Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 548, 84 L. Ed. 732, where the Court, determining whether a laborer on a coaling vessel was a "member of a crew" and therefore without the protection of the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. said:

"The word 'crew' does not have an absolutely unvarying legal significance. * * * *our concern there was 'to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained.'* * * *

"That is our concern here in construing this particular statute—the Longshoremen's and Harbor Workers' Compensation Act—*with appropriate regard to its distinctive aim.* We find little aid in considering the use of the term 'crew' in other statutes having other purposes. This Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen * * * were still regarded as distinct from members of a 'crew.' They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation."

Other cases which command special attention and consideration are: Helena Glendale Ferry Co. v. Walling, supra; Spinner v. Waterways Co., supra; Arnesen v. Manhattan Lighterage Corp., D.C., 57 F.Supp. 218, reversed, by the Second Circuit Court of Appeals sub. nom. Anderson v. Manhattan Lighterage Co., 148 F.2d 971; and Gale v. Union Bag & Paper Co., 5 Cir., 116 F.2d 27.

The decree is

Affirmed.

---

* Spinner v. Waterways Fuel & Dock Co., 70 Ohio App. 121, 41 N.E.2d 144; Arnesen v. Manhattan Lighterage Corp., D.C.N.Y., 57 F.Supp. 218, reversed in Anderson v. Manhattan Lighterage Co., 2 Cir., 148 F.2d 971, which opinion has just come to our attention and meets our approval; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; Gale v. Union Bag & Paper Corporation, 5 Cir., 116 F.2d 27, affirming Lowrimoore et al. v. Union Bag & Paper Corporation, D.C., 30 F.Supp. 647; Duke v. Helen-Glendale Ferry Co., 203 Ark. 865, 159 S.W.2d 74, 139 A.L.R. 1404; Jordan v. American Oil Co., D.C., 51 F.Supp. 77.