## STERNBERG DREDGING CO. v. WALLING.
### No. 13329.

Circuit Court of Appeals, Eighth Circuit.

Dec. 16, 1946.

Rehearing Denied Jan. 14, 1947.

R. Emmett Kerrigan, of New Orleans, La. (Henry Davis, of St. Louis, Mo., Deutsch, Kerrigan & Stiles and Marian Mayer, all of New Orleans, La., and Bryan, Cave, McPheeters & McRoberts, of St. Louis, Mo., on the brief), for appellant.

George M. Szabad, Atty., Department of Labor, of Washington, D. C. (William S. Tyson, Sol., and Morton Liftin, Asst. Sol., both of Washington, D. C., Reid Williams, Regional Atty., of Kansas City, Mo., and Eugene Green, Atty., of Washington, D. C., on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment of the District Court restraining violations of the overtime and record-keeping provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207, 211(c), 215(a)(2), and 215(a)(5). The question is whether persons employed by appellant aboard its dredges engaged in the maintenance and development and improvement of navigable interstate waterways are excluded from the coverage of the Act by section 13(a)(3), 29 U.S.C.A. § 213(a)(3), exempting from coverage any employee employed as a seaman. The District Court answered the question in the negative.

Appellant is a corporation engaged at various places in the United States and in foreign territories in improving and cleaning interstate waterways and harbors and in the construction of levees, dikes, canals, launching slips, and landing areas along

navigable waterways. In the performance of this work appellant employs three hydraulic dredges, four clamshell dredges, and various tugs, launches, barges, and machines. One of appellant's dredges is self-propelled and is able to move to the scene of its dredging operations under its own power. The others are towed to their job sites by tugboats. All of the dredges carry supplies of machinery and parts, equipment, and stores used in removing materials from navigable waters in the course of their dredging operations. Since the dredges move on navigable waters, they are fitted with decks, companion ways, operating bridges, engine rooms, galleys, and mess halls. The primary function of the dredges, however, is the removal of deposits of mud, silt, and rock from the channels of navigable waters.

Each dredge, hydraulic or clamshell, is equipped with two long sections of fabricated steel rounded with wooden members, or with two steel cylinders filled with concrete, called spuds, and with swinging wires and anchors. Upon reaching the place of dredging operations the spuds and anchors are dropped and dredging operations begin. During the dredging operations dredges engage in a slight movement, up to 2,000 feet a day, by manipulation of swinging wires and anchors. A hydraulic dredge operates by means of a rotary cutter at the end of a ladder attached to the bow and a pipe line attached to suction pumps. This equipment is lowered into the water to the required depth and the cutter slices through the material being dredged, cutting a segment which is then forced by the suction pumps through the pipe line to the desired place of deposit. If the deposit is being made on shore, the pipe lines are supported by pontoons. After a segment has been cut, the ladder is raised by power machinery on the dredge, and the dredge is then swung forward in an arc by manipulation of its swinging wires, swinging anchors, and spuds. When a starting point for a new cut is reached, the operation is repeated.

Clamshell dredging is similar to hydraulic dredging, except that the excavation is accomplished by raising and lowering a large bucket-like apparatus by means of cables

and the dredged material is deposited on barges and transported away or the full bucket is swung away from the digging site and then emptied.

The personnel of a dredge is made up of the following complement of officers and crew: the captain, mates, deckhands, a chief engineer, assistant engineers, oilers, levermen, welders, electricians, cooks, messmen, cabin boys, motorboat operators, tug captain, and tug mates or engineers. The Administrator agrees that tug captains, tug mates or engineers, and motorboat operators and the personnel on the tugs and the motorboats when engaged exclusively in the workweek in navigating the tugs or motorboats in transportation are seamen within the meaning of that word in section 13(a)(3) of the Act.

The master or captain of the dredge is in complete charge of the dredge. He issues all orders relative to movements and dredging operations. On movement from one scene of operations to another, which in many cases extends from one State to another, the dredge is under command of the captain and is manned by the regular officers and crew, just as when engaged in dredging operations. The mates or foremen assist the captain and see that his orders are carried out. The chief engineer is responsible for the proper functioning of all machinery. An assistant engineer is on duty on all watches. He supervises the oilers in the engine room and makes minor repairs. The levermen manually operate the dredging machinery. Welders and electricians perform the usual duties of such employees. The cooks, messmen, and cabin boys prepare the food and keep the quarters for the crew. The work of the deckhands consists of the usual deckhand duties. They scrub, chip, and paint the dredge; clean machinery; assist in unloading fuel and supplies; manipulate lines and pontoons; handle lifeboats; drop and weigh anchors; and assist generally in the operation of the dredge.

The dredges normally operate in three eight-hour shifts or watches, twenty-four hours a day, seven days a week. Occasionally, they are operated on two twelve-hour shifts. The number of men on a crew on each shift varies from eighteen to twenty-

one. When conditions permit, the men are allowed to go home at nights; otherwise, they sleep and eat aboard the dredge, or in the case of two of the clamshell dredges, sleeping quarters are provided on quarter boats. With the exception of the captain and chief engineer, all dredge crew workers are paid semi-monthly on an hourly rate basis for straight time. None of the workers on board the dredges and auxiliary craft has been paid as required by the Act, except for a short time during which appellant was engaged on a Government contract which provided for the payment of wages at the rate of one and a half times the regular rate of pay for all hours worked in excess of forty hours a week. A deduction of $1 a day is made from each worker's pay for meals.

None of the dredge workers is required as a condition of his employment to be certified as a seaman by the Government, to have a Government license, to sign seamen's articles, or to take navigation tests. The dredges are not inspected by any agency of the Government. They are, however, enrolled and licensed by the Government. The officers and crews of a dredge are afforded the facilities of the United States Marine Hospital.

Since the dredges are vessels which move or are moved on navigable waters, transporting in such movements their personnel and equipment; and since while under way, as well as when stationed at the scene of the dredging operation, the personnel of the dredges customarily perform some of the work done by the members of the crews of passenger and cargo vessels, appellant contends that there is no practical or legal distinction between its dredge workers and the personnel employed as seamen on cargo or passenger vessels engaged in transportation by water; that prior to the passage of the Fair Labor Standards Act dredge workers were uniformly held to be seamen as the word is used in other Acts of Congress; that the legislative history of the Act does not show a Congressional intent to limit the commonly accepted definition of the word "seamen"; and that the purposes of the Act do not require a different definition. Appellant says: "The identity of a dredge as a ves-sel, similar to that of a cargo or passenger vessel, carries with it the classification of its crew as 'seamen'. * * * The members of the crew of a dredge are admitted to Marine Hospitals as 'seamen', they are entitled to coverage under the Jones Act [46 U.S.C.A. § 688] which provides damages for death and personal injury to 'seamen'; they are excluded from the Federal Unemployment Insurance Act [26 U.S.C.A. Int.Rev.Code, § 1600 et seq.] as 'members of the crew of a vessel'; they are excluded from the coverage of the Longshoremen's and Harbor Workers' Act [33 U.S.C.A. § 901 et seq.] because they are 'members of the crew of a vessel'; they are entitled to maritime liens for wages; they are qualified to join the National Maritime Union; and they are guilty of mutiny for breach of discipline aboard a dredge."

█ If we concede that the appellant is correct in each of the statements quoted from its brief, the concession avails appellant nothing in the present case. For the gist of this argument is merely that the meaning of the word "seamen" in the context of other Acts of Congress is a sure guide to its meaning as used in the section of the Fair Labor Standards Act exempting "Any employee employed as a seaman" from the coverage of the Act. That is to say, in the present case that, since the word "seamen" in statutes passed for the benefit of seamen may include within its meaning the personnel of dredges like those operated by appellant, the same broad inclusive meaning must be given to the word in the exemption clause of the Fair Labor Standards Act, the purpose of which is the protection of all employees engaged in commerce or in the production of goods for commerce. The cases in this and other circuits and in the Supreme Court of the United States are all to the contrary. International Stevedoring Co. v. Haverty, 272 U.S. 50, 52, 47 S.Ct. 19, 71 L.Ed. 157; Warner v. Goltra, 293 U.S. 155, 156, 55 S.Ct. 46, 79 L.Ed. 254; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 259, 60 S.Ct. 544, 84 L.Ed. 732; United States v. American Trucking Association, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L. Ed. 1345; Helena Glendale Ferry v. Walling, 8 Cir., 132 F.2d 616, 620; Walling

v. Bay State Dredging & Contracting Co., 1 Cir., 149 F.2d 346, 349, certiorari denied 326 U.S. 760, 66 S.Ct. 140; Walling v. Great Lakes Dredge & Dock Co., 7 Cir., 149 F.2d 9, 11, certiorari denied 326 U.S. 760, 66 S.Ct. 140; Walling v. W. D. Haden Co., 5 Cir., 153 F.2d 196, certiorari denied 66 S.Ct. 1373; Anderson v. Manhattan Lighterage Corporation, 2 Cir., 148 F.2d 971, 972, certiorari denied, 66 S.Ct. 27.

The problem of statutory construction is to find the legislative intent. In the interpretation of a statute its words are to be taken according to the meaning given them in common usage, unless to do so produces an absurd result or one which defeats the purpose for which the Act was passed. United States v. American Trucking Association, supra, 310 U.S. 534, at page 543, 60 S.Ct. 1059, 84 L.Ed. 1345. In the Helena Glendale Ferry case, supra, 132 F.2d 616, at page 619, this court held that seamen, as used in section 13(a)(3) of the Act, was to be taken according to its common acceptation, because to give it the broader or more inclusive meaning for which appellant contends here would defeat the purpose of the Act, which clearly is to bring within its protection every employee engaged in commerce or in the production of goods for commerce. It was held that since the Act is remedial and by its terms includes every employee coming within the broad scope of its coverage, the section granting exemptions is to be construed strictly against those claiming them, and that seaman as used in the phrase "Any employee employed as a seaman" was to be given its literal meaning as denoting one whose duties are maritime in character and rendered on a vessel in navigable waters. Appellant's dredge employees are engaged primarily in, and so far as the facts in the present case indicate, devote substantially all of their time to industrial as distinguished from maritime work. They are not employed in water transportation or in the navigation of vessels engaged in water transportation, except occasionally as an incident to their employment in dredging waterways. The mere fact that of necessity the work they do is performed upon navigable waters is alone not suffi-

cient to remove them from the coverage of the Act. Other Circuit Courts of Appeals in the cases cited above have reached the same conclusion with reference to dredge employees in cases involving facts not essentially different from the facts in the present case and on consideration of the same arguments which appellant presents here. In particular, in Walling v. Bay State Dredging & Contracting Co.; Walling v. Great Lakes Dredge & Dock Co., and Walling v. W. D. Haden Co., supra, it is held that dredge workers are not employed as seamen within the meaning of section 13(a)(3) exempting seamen from the coverage of the Fair Labor Standards Act, since their duties are not maritime in character. The administrative interpretation of the Act, entitled to weight on the question here, is likewise that employees on dredges are not employed as seamen within the meaning of the section exempting seamen from the coverage of the Act. Interpretative Bulletin No. 1, July 1939, revised July 1943, issued by the Wage and Hour Division, U. S. Department of Labor.

Appellant's arguments based upon the legislative history of the Act are discussed and denied in Walling v. Bay State Dredging & Contracting Co., supra, 149 F.2d 346, at page 349, and in Walling v. Great Lakes Dredge & Dock Co., supra, 149 F.2d 9, at page 11. We agree with the result reached in these cases.

It may well be, as apparently the Administrator concedes, that in a given workweek some of appellant's dredge employees, as for example those on the self-propelled dredge, may be employed as seamen when the dredge is moving from the scene of one dredging operation to another. But there is nothing in the record before us to indicate that any of the dredge employees have been in fact so employed for a substantial part of any workweek in the past. And the injunction order, operating only in the future, commands only the payment of overtime wages and the keeping of records in the case of persons employed by appellant "aboard a dredge in the maintenance, development and improvement of navigable interstate waterways or in the repair, alteration and reconstruction of levees, dikes and canals, * * * and launching slips,

naval air channels or landing areas along said waterways" in aid of interstate navigation.

The judgment of the District Court is affirmed.