**BROWN et al. v. DUNBAR & SULLIVAN DREDGING CO.**

No. 269, Docket 22008.

United States Court of Appeals, Second Circuit.

Argued May 10, 1951.

Decided June 8, 1951.

872

Edward J. Desmond, of Buffalo, N. Y. (Desmond & Drury and John E. Drury, Jr., all of Buffalo, N. Y., on the brief), for plaintiffs.

Sparkman D. Foster, of Detroit, Mich. (Foster, Lutz & Meadows, Detroit, Mich,

Hellings, Ulsh, Morey & Stewart, Buffalo, N. Y., Raymond A. Ballard, Detroit, Mich., and William P. Stewart, Buffalo, N. Y., on the brief), for defendant.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Defendant Dunbar & Sullivan Dredging Company appeals from a district court judgment holding it liable under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to pay William Brown and others overtime wages for work performed during the years 1939 through 1944. Defendant assigns error in the finding that it had not proved its defense of reliance in good faith upon agency rulings, made available to it by the Portal-to-Portal Act, 29 U.S.C.A. §§ 251–262, especially § 258; it also contends that the statute of limitations provisions contained in the latter Act, §§ 255–257, and Fed. Rules Civ.Proc. rule 15(a), 28 U.S.C.A., were violated because the action was permitted to proceed on an amended complaint which was neither timely filed nor in conformity with the Act's requirements. Brown and the other plaintiffs cross-appeal for an award of liquidated damages under § 11 of the Act, 29 U.S.C.A. § 260, which was refused by the trial court. We think the judgment must be affirmed.

The action was commenced by William Brown on January 26, 1946, "on behalf of and for the benefit of himself and all other employees and former employees of the defendant similarly situated." Defendant filed its answer on March 17, 1947. Then on May 14, 1947, the Portal-to-Portal Act became effective. 61 Stat. 84–90. This consisted in part of a statute of limitations on actions for back pay under the F.L.S.A. Sec. 6(b), 29 U.S.C.A. § 255(b), says that an action on a claim accruing prior to May 14, 1947, may be commenced within two years after the cause of action accrued or within the period prescribed by the applicable state statute of limitations, whichever is shorter. But this subsection is made explicitly inapplicable by the next one, (c), in cases where a cause of action which has accrued prior to May 14, 1947, "is commenced within one hundred and twenty days after May 14, 1947 unless at the time commenced it is barred by an applicable State statute of limitations."

Hence to find when an action is "commenced" we must refer to § 8, 29 U.S.C.A. § 257, which says that a "collective or representative action" pending on May 14, 1947—such as the case at bar—is to "be considered to have been commenced" by an individual claimant "when, and only when, his written consent to become a party plaintiff to the action is filed in the court in which the action was brought." In this case there is concededly no state statute of limitations applicable. Therefore, reading the above provisions together, it follows that the action in this case was properly brought by all plaintiffs if the consents required by 29 U.S.C.A. § 257, supra, were filed in the court in which the original action was brought within 120 days after May 14, or by September 11, 1947. On September 10, 1947, plaintiffs' counsel filed an amended complaint naming as additional parties plaintiff the various workmen for whom the district court rendered judgment in addition to William Brown. The same day they also filed what the docket entries described as the "consents of employees to become party plaintiffs."

First we examine these latter documents. Each one is in the form of a general retainer, signed in 1945 or 1946, to the law firm of Desmond & Drury, authorizing the latter to prosecute by suit or otherwise the signer's claim for overtime wages and liquidated damages under the Act against one or more of four named companies, one of which was the defendant. After provision for payment of a fee of 25 per cent of whatever might be recovered, the agreement concluded: "My claim shall not be settled or compromised without the consent of the law firm of Desmond & Drury and the President of the International Surface Rock and Drill Boat Association. I agree that my claim may be joined in any suit brought by myself and various other employees of the corporation mentioned in paragraph one of this agreement."

■ We think this constitutes a "consent" within the meaning of the Act. It is authority and direction to institute or join in suit for recovery under the Act. Defendant objects that under the statute quoted above the consent must refer explicitly to the action in which it is to be filed. There is nothing in either the words or the circumstances to require so strict and purely formalistic a reading. An aim of the Portal-to-Portal Act was "to prevent the assertion of surprise claims by unnamed employees at a time when the statute of limitations would otherwise have run." Gibbons v. Equitable Life Assur. Soc. of United States, 2 Cir., 173 F.2d 337, 339. What was done here fully served the purpose of the Act as thus stated; it is not necessary to press its construction to a point where a legally adequate grant of power to proceed under the Act is held insufficient for some want of special detail not pertinent to the legislative purpose. It has indeed been ruled that the amendment adding parties is sufficient, without written consents in addition to it. Bartels v. Piel Bros., D.C.E.D.N.Y., 74 F.Supp. 41. We need not go that far here to find the statute fully complied with.

Much the same answer can be made to defendant's next contention, *viz.*, that although the amendment adding the parties may have been filed in time, it was of no effect because its allowance was not then sought or had. This is based on a meticulous interpretation of F.R. 15(a), which provides for amendment after answer "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." What actually happened here was that on September 10, 1947, plaintiffs' counsel filed in court two documents—or aggregates thereof: one entitled an "Amended Complaint," wherein they set forth the names of all those similarly situated with the plaintiff for whose benefit he brought the action, and then repeated the allegations of the original complaint; and the other a document entitled "Consents to Become Party Plaintiffs," wherein they stated the names of all the employees as "those persons similarly situated with the plaintiff for and in whose behalf he brought the above entitled action" and also recited that there was attached the written consent of each one of those persons to become a party plaintiff in the action, there being attached the retainer agreements discussed above. Notice of return of service of the amended complaint was filed on September 11. On September 19, defendant moved to strike and dismiss the amended complaint as not filed in compliance with F.R. 15(a). This motion the court granted on October 13. Plaintiffs then moved for reargument and for leave to file and serve an amended complaint, with copy attached and with supporting affidavits asserting a failure previously to emphasize the controlling terms of the Act. On January 7, 1948, the court granted this motion, vacated its former order, and directed that the "amended complaint be, and hereby is, permitted to stand." In a memorandum the court said that the Act superseded the Rule and no application was necessary, adding that even if incorrect as to this, the amended complaint should be permitted to stand "in the interest of substantial justice." Thus at long last justice was done in terms of the statutory mandate, with the result not unusual after pressure for pleading niceties that we have a record with not less than three amended complaints and numerous motions and affidavits, in addition to the quite sufficient "Consents to Become Party Plaintiffs."

■ We might pass all this with the observation that there is surely no reversible error in the ultimate result. But for the sake of completeness we add that, first, no formal amendment was necessary to preserve the plaintiffs' rights under the Act and, second, the judge did have authority under F.R. 15(a) to grant the amendment, as he did. The Act is quite clear that an action is to be considered commenced, in the case of an individual claimant not originally named or his written consent then filed, "on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C.A. § 256(b). Nothing is said as to amendment; nor is there any such requirement as to representative suits

under the civil rules. See F.R. 23. So once the consents were filed in the allotted time the plaintiffs' rights were safeguarded. If then amendments were presented, the judge could consider them in the interest of orderly procedure and in the spirit of the free amending privileges contemplated by the rules, with no time barriers involved. See also Bartels v. Piel Bros., supra. After all, the rules were intended to facilitate the application of substantive law, not to fight it.

On the merits the only defense which the defendant makes to the plaintiffs' claim for "time and a half" overtime, 29 U.S. C.A. § 207, is that it had "relied" on administrative interpretations by governmental agencies that the work in question was not within the F.L.S.A. This is the well-known defense provided by the Portal-to-Portal Act if the defendant "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged." § 9, 29 U.S.C.A. § 258. Here the plaintiffs were employed by the defendant to work on one or more of four contracts between it and the War Department, acting through its Corps of Engineers, in deepening existing river channels. All the contracts were awarded on the basis of a 48-hour week. Overtime, at double rates on Sundays or holidays, was restricted to emergencies. Defendant's contracts with the employees' union provided for a 26-day work month and an 8-hour day. The construction contracts further required that copies of defendant's weekly payrolls be filed with the Corps of Engineers, which was done. As the trial court found, the recipients of these copies had sufficient information to inform them that the contracts were being performed on the basis of a 48-hour week, except for the exceptional overtime noted above.

The Wage and Hour Division of the Department of Labor made no attempt to enforce the provisions of the F.L.S.A. with respect to maritime employees of dredging companies until it concluded that it should do so because the United States Supreme Court refused to review Walling v. Bay State Dredging & Contracting Co., 1 Cir., 149 F.2d 346, 161 A.L.R. 825, certiorari denied 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457, and Walling v. Great Lakes Dredge & Dock Co., 7 Cir., 149 F.2d 9, certiorari denied 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457. The trial court found that "continuously since 1940 and as late as June, 1945," it was the War Department's practice to award contracts such as those here "without provision for overtime compensation as provided by the Fair Labor Standards Act." On these facts the trial court then concluded that "The failure of the defendant to comply with the provisions of the Fair Labor Standards Act was not in conformity with and reliance on any administrative regulation, order, ruling, approval, or interpretation of any agency of the United States, or any administrative practices of enforcement policy of any such agency within the meaning of Section 9 of the Portal to Portal Act and the facts established do not constitute a bar to this action." We have to decide whether or not the court was justified in reaching this conclusion.

Under § 258, it is clear that an employer must definitely prove his reliance upon some disclosed agency action and cannot rely upon his good faith belief alone. This is shown not only by the wording of the statute, but also by the further provision in § 11, 29 U.S.C.A. § 260, authorizing the court to refuse liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of" the F.L.S.A. Otherwise of course this important grant would be mere surplusage.

Here the only evidence that defendant "relied" on a ruling by an agency of the United States was given by Edward A. Koonmen, its former general superin-

tendent and present vice-president. He testified that he was familiar with the contracting jobs in question, and had something to do with keeping the company's records. Aside from testifying that the contracts and the prior negotiations leading thereto contained material from which someone might have deduced, had he had all the materials together at one time, that the defendant was not paying its employees overtime when they worked more than 48 hours a week, his evidence of reliance consisted only of the statement that he "went over to the War Labor Board in Detroit" and discussed the matter. He said that he "didn't ask for any bulletins, to take with me, and they didn't give me any." He did not have with him the memorandum which he said he made of the conversation with these people; nor could he produce the various letters, reports, and the like to which he made constant reference. This evidence was too uncertain, vague, and ambiguous to convince the judge. Thus compare the rigorous proof submitted in Lassiter v. Guy F. Atkinson Co., 9 Cir., 176 F.2d 984. On such a record the court was entirely justified in holding the defense under § 258 unproven.

It is clear that the statute does not contemplate excuse of an employer merely on a failure of governmental agencies to take the initiative in directing a change in an employer's wage policies, even though there may conceivably have been enough information in the various files so that, if assembled and considered, defendant's error would have been apparent. Such a view would require the contemplation of government not as the congeries of variegated and often conflicting activities it is, but as a single unified personality where scattered information to any part was notice to the whole. More realistic is it to expect defendant itself to seek some interpretative ruling as a safeguard if none is in existence. The court did give the defendant the benefit of accepting its good faith in denying plaintiffs any liquidated damages. We think that much grace is all defendant may appropriately claim.

Since we hold that this denial of liquidated damages was an exercise of "sound discretion" under all the circumstances, it is therefore justified by 29 U.S.C.A. § 260, and plaintiffs' appeal must also fail. On both appeals we therefore hold that judgment must be

Affirmed.