CHAMBERS CONSTRUCTION COM-
PANY, a Corporation, and L. H.
Chambers, Appellants,

v.

James P. MITCHELL, Secretary of Labor,
United States Department of
Labor, Appellee.

No. 15452.

United States Court of Appeals
Eighth Circuit.

June 5, 1956.

Max Kier, Lincoln, Neb., for appellants.

Sylvia S. Ellison, Attorney, U. S. Dept. of Labor, Washington, D. C., (Stuart Rothman, Solicitor, Bessie Margolin, Asst. Solicitor, William W. Watson, Attorney, Washington, D. C., and Harper Barnes, Regional Attorney, U. S. Dept. of Labor, Kansas City, Mo., on the brief), for appellee.

Before STONE, JOHNSEN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Appellants, Chambers Construction Company and L. H. Chambers, its president, personally, have been enjoined by the District Court from violating the provisions of Section 15(a) (1, 2, 5), 29 U.S.C.A. § 201 et seq., of the Fair Labor Standards Act of 1938, as amended. These sections respectively make unlawful delivery or sale of goods produced in violation of the Act, violations of overtime provisions, § 7, and violations of various record-keeping requirements, § 11(c), set out in agency regulations. Appellants' main defense is, and was, that the activities of the employees involved were outside the scope of the Act because not engaged "in commerce", or "in the production of goods for commerce".

Chambers Construction Company is a Nebraska corporation having its principal place of business in the City of Lincoln, Nebraska. The president and general manager of the firm, L. H. Chambers, owns 450 shares of the corporate stock, while his wife, the corporation's secretary, owns 50 shares. These two holdings comprise the entire stock ownership of the corporation. The company is engaged in the general contracting business, specializing in construction and reconstruction work upon municipal water and sewer systems in Nebraska and other states.

On or about December 28, 1948, the company contracted with the City of Beatrice, Nebraska, for the construction of a segment of the city's water supply main crossing the Big Blue River. This new segment (a 16-inch pipe 221 feet long) was intended to be a replacement for a similar segment which, for reasons of safety and security, had to be abandoned. The contract also involved certain piping changes and valve installations. Work on the proposed replacement took place while the old main was

still being used, the plan being that the new line would be interspliced on completion with a minimum of interference with the city's water supply intake.

The water carried by the supply main at the time in question was used by the City of Beatrice and was sold by the city to its customer water users, some of which were railroads engaged regularly and continuously in interstate commerce. Other users included industrial firms using the water in various ways incident to manufacture of their products, which products were distributed and sold in interstate commerce.

During the progress of work on the Beatrice job, it is conceded for our purposes that four workmen, whose work was necessary to the performance of the contract, worked over 40 hours in certain weeks and were not paid time and one-half for the hours worked over 40, nor were adequate records kept, both being violations of the Act if such employees were, under the provisions of the Act, engaged "in commerce" or in "production of goods for commerce".

At this and other times set out in the evidence, two timekeepers were in the company's employ. These employees accompanied the work crews to the construction sites and kept time and progress records which would be mailed to the home office. Employees' checks were then made out from the submitted records and sent to and distributed by the timekeepers. At the time stated in the instant complaint, these timekeepers were working outside the State of Nebraska. At the home office in Lincoln, Nebraska, the company employed a secretary and two "take-off" clerks. The "take-off" work consisted of ascertaining and classifying quantities of work from blueprints of prospective construction jobs, with the data thus obtained utilized in submitting bids on the various jobs, some within and some without Nebraska. The secretary would send letters in connection with the business, keep books and issue salary checks computed from records sent by the timekeepers. Many of the letters and checks were sent beyond Nebraska. It is sufficient for our purposes to assume that the wage or record-keeping policies of the company concerning each of these "clerical" workers was a technical violation of the Act, if the Act applies. It is to this latter hypothesis that appellants direct the greater force of their brief and argument.

■ Appellants assert, correctly, that "the nature of the employer's business is not determinative, the application of the Act depending upon the character of employees' activities and not the nature of the employer's business". A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Helena Glendale Ferry Co. v. Walling, 8 Cir., 1942, 132 F.2d 616. With this premise, we will consider each employee group separately.

Concerning the activity of the construction workers on the Beatrice job, appellants aver that they, as the employer, proceeded on the good faith assumption that the construction being an entirely new main, designed for later use in connection with an existing water facility, such construction was not interstate commerce though eventually some persons engaged in interstate commerce might be served thereby. Appellants assert they relied on Wage and Hour Interpretative Bulletin No. 5, December 2, 1938, BNA, 1944–1945, WH Man. 23, wherein the agency stated:

"The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which is shipped or sold across state lines. Thus, it is our opinion that employees engaged in the *original construction* of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commerce * * *." (Emphasis supplied.)

See also Koepfle v. Garavaglia, 6 Cir., 1952, 200 F.2d 191; Moss v. Gillioz Const. Co., 10 Cir., 1953, 206 F.2d 819.

The trial court, following the so-called "new construction rule", stated:

> "* * * that the construction of an entirely new facility, e. g. a highway, which after construction is utilized for interstate commerce is not within the reach of the Act."

But the court concluded:

> "But the improvements in those cases are not comparable to replacement of the river crossing in the Beatrice water main. The erection which was made under the Beatrice contract was not susceptible of use by itself or otherwise than through its incorporation into the long water carrying main in replacement of the former river crossing segment. * * * The so-called 'new' segment is a replacement or repair designed only for that purpose and of no value or service otherwise."

Since the opinion of the District Court was written, the United States Supreme Court, in Mitchell v. C. W. Vollmer & Co., Inc. (dec. June 6, 1955) 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196, has considered the "new construction rule". The construction in that case was a lock and canal which would form part of the Gulf Intercoastal Waterway, and which was designed as an alternate route to an inadequate existing lock and canal. The Supreme Court, after citing Raymond v. Chicago, M. & St. P. R. Co., 1917, 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583, which was a precursor of the "new construction rule", stated, 349 U.S. at page 429, 75 S.Ct. at page 862:

> "We do not think that case should control this one. We are dealing with a different Act of another vintage—one that has been given a liberal construction from A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, to Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745. The question whether an employee is engaged 'in commerce' within the meaning of the present Act is determined by practical considerations, not by technical conceptions. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 128, 130, 63 S.Ct. 494, 496, 497, 87 L.Ed. 656. The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity. See McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538. *Repair of facilities of interstate commerce is activity 'in commerce' within the meaning of the Act,* as we held in J. F. Fitzgerald Const. Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316. *And we think the work of improving existing facilities of interstate commerce,* involved in the present case, *falls in the same category."* (Emphasis supplied.)

Although appellants are not convinced (because of lack of specific reference to the decisions of the various courts applying the "new construction rule") that Mitchell v. C. W. Vollmer & Co., Inc., has overturned the rule, they concede that it has been "affected" and then state that until Vollmer the construction involved would not have come under the Act.

At this point it is argued that since the Vollmer case was not decided until after the instant violations or action, and since the decision is at least a change in the law, there was no violation in 1948 or 1949 because to everyone concerned the construction employees were not at that time engaged "in commerce" under the Act. See Interp. Bull., supra.

In our opinion, the Vollmer decision infers that the "new construction rule" is not applicable to the *repair or replacement of existing facilities.* This is not a change in the law. It has been true ever since the F.L.S.A. was passed in 1938. The fact that it may have been misinterpreted or misconstrued is beside

the point and may go only to the matter of an employer's good faith.

Nevertheless, without considering whether the Vollmer language does change or eliminate the "new construction rule", as contended by appellants, it is obvious that the type of "replacement-improvement" construction involved in that case is not in all respects similar to a "replacement" construction such as we have here. Under these facts, it is inconsequential when the instant action was begun.

■ As already indicated above, even if the Vollmer case had not arisen, we would be disinclined to approve the adjudication desired by appellants. As stated by the trial court:

"Admitting the validity in a proper setting of the 'new construction' rule, it has no place here. * * * No new main was made and the contract in its entirety so indicates. It is the substance of the thing that counts and the constructed piping, in substance, was a replacement or repair, nothing else."

This statement supports the government's contention that the words "original construction" in the interpretative bulletin contemplated a different situation than replacement or repairs which were involved here, thus making reliance on that bulletin in this instance ill-advised.

Mention is made that the Vollmer case dealt with improvements to interstate instrumentalities while the instant case is concerned with improvements to facilities transporting commodities used to produce goods for interstate commerce. While conceding the distinction, we do not consider it determinative. The Fair Labor Standards Act definitive section stated, § 203(j):

"* * * an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any*

*closely related process or occupation directly essential to the production thereof, in any State."* (Emphasis supplied.)

This subsection is broad enough to enclose the instant construction.

■■ Interpolation of this same reasoning serves to answer another of appellants' suggestions; that the test necessary for an employee to be considered engaged in commerce has not been satisfied. The test, as set out in Vollmer and prior thereto is: "Whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity. See McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538." We consider this test inapplicable where coverage is bottomed on "production of goods for commerce". It is necessary, then, to determine only if the worker was engaged in producing goods for commerce, and we concur in the trial court's opinion where it is stated:

"In view of the consistent pattern of decision the court necessarily holds that each of the employees, Fielder, Moore, Watts and Lewis was during the closing month of 1949 engaged in the production of goods for commerce through his work for the performance of the construction contract with the City of Beatrice. It is true that none of them directly came into contact with or worked upon the manufacture of articles that were shipped in commerce. But that is not necessary. Actual physical contact with goods produced for interstate commerce is not essential to bring a laborer within coverage of the Act as one engaged in the production of goods for commerce. Walling v. McCrady Construction Co., 3 Cir., 156 F.2d 932; E. C. Schroeder Co., Inc., v. Clifton, 10 Cir., 153 F.2d 385; Phillips v. Meeker Cooperative Light & Power Ass'n, D.C.Minn., 63 F.Supp.

733, affirmed, Meeker Cooperative Light & Power Ass'n v. Phillips, 8 Cir., 158 F.2d 698."

■ Concerning the employees in the home office and the timekeepers out of state, appellants argue that their activities in relationship to interstate commerce were remote and inconsequential and that inter-office reports are not "goods". Mitchell v. Household Finance Corp., 3 Cir., 1953, 208 F.2d 667. However, as is evident from this court's decision in Tobin v. Johnson, 1952, 198 F.2d 130, certiorari denied Johnson v. Durkin, 345 U.S. 915, 73 S.Ct. 726, 97 L. Ed. 1349, the Supreme Court's decision in Alstate Const. Co. v. Durkin, 1953, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745, and the trial court's statement, supra, the employee need not be physically engaged in the construction work on the facility in order to be within the coverage of the Act. It is necessary only that he be in a related process or occupation directly essential thereto. 29 U.S.C.A. § 203(j). It would not seem essential under § 203(j) that the physical objects be goods in themselves.

As an interpretation of the proximal requirements of this section, the Supreme Court, in Roland Electrical Co. v. Walling, 1946, 326 U.S. 657, has said, at page 663, 66 S.Ct. 413, at page 415, 90 L.Ed. 383:

" 'Every employer shall pay (not less than the required minimum wages) to each of his employees who is employed in any process or occupation necessary to the production, in any state, of any part or ingredient of any articles or subjects of trade, commerce or transportation, of any character, for trade, commerce or transportation among the several states.' This does not require the employee to be directly 'engaged in commerce' among the several states. This does not require the employee to be employed even in the production of an article which itself becomes the subject of commerce or transportation among the several states. It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states. This does not require an employee to be employed exclusively in the specified occupation. This does not require that the occupation in which he is employed be indispensable to the production under consideration. It is enough that his occupation be 'necessary to the production.' There may be alternative occupations that could be substituted for it but it is enough that the one at issue is needed in such production and would, if omitted, handicap the production."

Similarly, in Borden Co. v. Borella, 1945, 325 U.S. 679, at page 683, 65 S.Ct. 1223, at page 1225, 89 L.Ed. 1865, the Supreme Court stated:

"In an economic sense, production includes all activity directed to increasing the number of scarce economic goods. It is not simply the manual, physical labor involved in changing the form or utility of a tangible article. Such labor is but an integral part of the coordinated productive pattern of modern industrial organizations. Equally a part of that pattern are the administration, management and control of the various physical processes together with the accompanying accounting and clerical activities."

This court, in McComb v. Wyandotte Furniture Co., 8 Cir., 1948, 169 F.2d 766, held bookkeepers handling records pertaining to interstate goods to be engaged in production of goods for commerce, and in Hertz Drivurself Stations v. United States, 8 Cir., 1945, 150 F.2d 923, we decided general clerical workers were engaged in activities which, at page

928, "were necessary incidents and part of the integrated operation of the business in its production of goods for commerce."

With this illumination, we conclude that the estimates submitted by the "take-off" men, and the time records and other communications of the timekeepers and secretary were integral parts of the operation producing goods for commerce and hence under the Act. Meeker Cooperative Light & Power Ass'n v. Phillips, 8 Cir., 1946, 158 F.2d 698; Durkin v. Joyce Agency, Inc., D.C., N.D.Ill.E.D.1953, 110 F.Supp. 918, affirmed U. S. Supreme Court 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740; Walling v. McGrady Const. Co., 3 Cir., 1946, 156 F.2d 932, certiorari denied 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673; Durkin v. Mercer Water Co., D.C.W.D.Pa.1953, 112 F.Supp. 656, affirmed per curiam, Mitchell v. Mercer Water Co., 3 Cir., 208 F.2d 900.

Appellants complain of the trial court's action in entering a permanent injunction against the individual defendant L. H. Chambers, on the ground that he is not an employer within the meaning of the Act. Sections 6 and 7 of the Act apply to "every employer". Section 3(d) provides that, as used in the Act, "employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee. From the findings of the court below, it appears that Mr. Chambers was engaged in the active management of the affairs of the corporation, although he was "shown not to have assumed any special obligation individually to pay the wages or salaries of Chambers Construction Company's employees and * * * his dealings with those employees * * * have been conducted by him as president and general manager of the corporation and not personally". The record shows that the supervisors and home office force were hired by him directly and the wages paid all employees were subject, in varying degrees, to his control. The lower court based its in-dividual injunction on the finding that Mr. Chambers is not merely the president and manager of Chambers Construction Company, "it is his creature, an instrumentality by which he does business and operates in the contracting field. In reality it is Mr. Chambers incorporated and, in practical effect, is subject to termination at his pleasure or option."

We believe, as did the judge of the lower court, that Mr. Chambers is includible in the definition of "employer" in § 3(d) of the Act. Proceeding from this determination, we conclude that the trial judge did not abuse the broad discretion vested in him in granting injunctions under § 17, 29 U.S. C.A. § 217. See Western Union Telegraph Co. v. McComb, 6 Cir., 1947, 165 F.2d 65, certiorari denied 333 U.S. 862, 68 S.Ct. 743, 92 L.Ed. 1141, rehearing denied 333 U.S. 883, 68 S.Ct. 911, 92 L. Ed. 1158; Mitchell v. Reynolds, D.C. Ark.1954, 125 F.Supp. 337. The case most similar in facts to our situation, and relied upon by the appellants, is Helena Glendale Ferry Co. v. Walling, supra, wherein this court *affirmed a denial of an injunction* against an individual employer because he was subject, as agent, to the commands of the corporate injunction, which expressly restrained the company, its agents, servants, and employees and all claiming to act upon its behalf. The court in that case said, 132 F.2d at page 620:

"It is difficult to see in what respect the Administrator is prejudiced in the enforcement of the Act by the court's refusal to include A. C. Johnson specifically as one of the parties enjoined."

It is obvious from the opinion of the trial judge in the case at bar that under the instant facts he considered that the effectiveness of the injunction would be unduly restricted by failure to include Mr. Chambers individually, whereas in the Helena Glendale case the trial judge did not. We do not consider

it an abuse of discretion to preclude the possibility that one might circumvent the force of the court's action by some possible means which is not evident or threatened but only feared.

Lastly, appellants contend that the permanent injunction granted was neither appropriate nor proper either under the instant circumstances or where past violations have not occurred from any intention on the part of the employer willfully to disregard the law, but from innocent misapprehension as to what the law was. We consider neither argument forceful.

Although the activity which gave rise to the litigation has been completed, the cessation does not render the injunctive order a moot question. Hecht Co. v. Bowles, 1944, 321 U.S. 321, 327, 64 S.Ct. 587, 88 L.Ed. 754; Walling v. Helmerich & Payne, 1944, 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Reid, 8 Cir., 1943, 139 F.2d 323. Where the violation established is likely to resume, the court should grant an injunction. McComb v. Wyandotte Furniture Co., 8 Cir., 1948, 169 F.2d 766, 770. Of course, appellants insist there is no showing in the record that they did intend or do intend to violate the law. But it is significant that the trial court granted the injunction while obviously fully apprised of the entire situation and the applicable law. As an evidentiary basis for the injunction, the trial court stated:

"Here, though the Beatrice job has long since been finished, the business and operations of the defendants continue unchanged. They are still engaged in the same contracting work at places in Nebraska and Iowa where jobs arise from time to time.

"There is no showing of their current practices in relation to the subjects that brought them here in this action. So far as appears they are unchanged although that may not actually be true. It is of significance, too, that the defendants do not aver that they have changed their course in the violation of the Act; in fact, that they are before the court arguing that they need not change and that the Act does not and never did apply in favor of their employees. The defendants insist that they are here not as sinners doing penance but as among the just who need not penance."

Appellants complain that under the injunction as granted,

" * * * these defendants at their peril must, under the injunctive order entered by the trial court in this case, resolve all such questions properly and definitively, without error, controversy or the benefit of judicial determination. Surely, this is casting upon these defendants, in the operation of their business, an almost intolerable burden."

A similar complaint was answered by the Supreme Court in McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599. In that case, the court was dealing with a civil contempt proceeding alleging violations of a decree which enjoined the employers from violating the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act. The court pointed out, 336 U.S. at page 193, 69 S.Ct. at page 500:

" * * * where as here the aim is remedial and not punitive, there can be no complaint that the burden of any uncertainty in the decree is on respondents' (employers') shoulders."

The trial court herein, in granting an injunction against both the corporation and Chambers individually, exercised that broad discretion which under the law is its own. We have considered the case and the record in its entirety. We find no abuse of that discretion. The trial court's findings and its conclusion to grant the injunctions complained of will not be disturbed.

Affirmed.