**H. B. ZACHRY COMPANY**

v.

**James P. MITCHELL, Secretary of Labor, United States Department of Labor.**

**James P. MITCHELL, Secretary of Labor, United States Department of Labor**

v.

**H. B. ZACHRY COMPANY.**
**No. 17311.**

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1959.

instances antedated the Platte Valley-Petzoldt receipts.

Sidney D. Callender, San Antonio, Tex., R. Dean Moorhead, Austin, Tex., Allen Wood, Corpus Christi, Tex., Chester H. Johnson, San Antonio, Tex., for appellant.

Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, Washington, D. C., Earl Street, Regional Atty., Dallas, Tex., Stuart Rothman, Sol., Jacob I. Karro, Washington, D. C., Albert M. Horn, Attorneys, U. S. Dept. of Labor, Birmingham, Ala., for appellee.

Before TUTTLE, JONES and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

H. B. Zachry Company is a Texas corporation engaged in large construc-

tion projects. During its existence it has completed more than 1200 of a value of over $300,000,000. More than $78,-000,000 worth of construction work was completed by this company during the three years preceding the trial. These projects include the building of highways, railroads, power lines, dams, and water systems. It was under contract with the Lower Nueces Water Supply District to build a dam for the purpose of providing a water reservoir approximately ten times the size of that previously existing. The District was under contract to furnish water exclusively for the City of Corpus Christi, Texas. The dam, known as the Mathis Dam, is some 1500 feet downriver from an older dam which would be inundated upon the completion of the new construction.

Industries in and around Corpus Christi used large quantities of water from the present water system and reservoir and will continue to do so as a necessary part of their activities in producing goods for commerce.

Investigation by the Wage and Hour Division of the Department of Labor disclosed, without dispute, that certain construction employees of Zachry Company were not paid in accordance with the minimum wage requirements of the law—that is they were not paid time and a half for overtime beyond forty hours per week, unless the overtime hours occurred on days on which the employees worked more than eight hours, or unless they worked on Sunday. Following this investigation, the Secretary filed suit against Zachry seeking a temporary and permanent injunction against such alleged violation of the Wage and Hour Law.

The trial court held a hearing on the motion for preliminary injunction, and although expressing the tentative view that the activities of the construction workers were covered by the Act, it declined to enter a temporary injunction pending a full development of the case on final trial. At the later trial the Court adhered to its view that the workers were covered by the Act, and granted an injunction as to the construction employees on the particular project only, stating when it did so that Zachry's president had estimated the project would be finished in thirty days. It elsewhere appeared in the record that the job was substantially completed.

Zachry Company appealed on the ground that the construction workers on this project were not covered by the applicable section of the Wage and Hour Law.[1]

The Secretary of Labor filed a cross appeal contending that the trial court erred in not granting a general injunction against Zachry prohibiting violation of the terms of the Act as to all future activities of the company.

The Secretary concedes that the construction workers were not engaged "in commerce." If, therefore, his views are to prevail it must be on the basis of their being engaged "in the production of goods for commerce." Since obviously they are not actually, while building the dam, producing any goods for commerce, the Secretary's case must depend upon a construction of the definition section of the statute, 203(j), to the effect that the

---

1. 29 U.S.C.A. § 207(a) provides as follows:

"Except as otherwise provided in this section, no employer shall employ any of his employees who engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."
29 U.S.C.A. § 203(j) reads:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

construction workers are employed "in [a] closely related process or occupation directly essential to the production" of goods.

■■ Although this is a much litigated field, we find no decision of the Supreme Court, and only one Circuit Court opinion in which this definition is sought to be applied to a state of facts closely similar to those here presented.[2] There are certain general pronouncements of the Supreme Court, however, which serve as guideposts to us in our attempt to apply this statute. The first of these is that this statute should be given a liberal construction, Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196. The second is that the scope of the Act is not coextensive with the power of Congress over commerce. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. As stated in 10 East 40th Street Building, Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 1228, 89 L.Ed. 1806, "in enacting this statute Congress did not see fit, as it did in other regulatory measures, e.g., the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to exhaust its constitutional power over commerce." A further general principle is that which requires courts to undertake, if possible, to understand the purpose sought by Congress in adopting an amendment to a statute which has already been the subject of much judicial construction.

As to the first general principle above enunciated, we do not understand the Government to contend that the doctrine of liberal construction overrides the court's duty to construe the language of the statute as applied to a particular state of facts in the manner which the court concludes carries out the intent of Congress. We think that this Court has

consistently followed the rule of liberal construction. Recent decisions of this Court, we think, evidence its purpose to apply the language of the statute liberally in areas of doubt. In discharging what the Supreme Court in 10 East 40th Street Building, Inc. v. Callus, supra, calls its "responsibility of applying *ad hoc* the general terms of the statute to an infinite variety of complicated industry situations," this Court has held subject to the Act, because engaged in commerce, employees of a contractor engaged in building a new building for a radio broadcasting station, Mitchell v. Hodges Contracting Co., 5 Cir., 238 F.2d 380, employees engaged in the construction of a field plant for production of materials essential to the construction of a causeway to become a link in an interstate highway system, Archer v. Brown & Root, Inc., 5 Cir., 241 F.2d 663, and employees engaged in the construction of bulk jet fuel storage tanks and fueling systems at an airport for the United States Air Force, Mitchell v. Empire Gas Engineering Co., 256 F.2d 781, 784, in which this Court stated "the Act is to be given a liberal construction. Whether an employee is engaged 'in commerce' within the meaning of the Act is determined by practical considerations, not by technical conceptions."

■ Regarding the second general principle, we think it plain both from the legislative history and the many court decisions emphasizing the fact, that not every activity that in any way affects commerce, and not every activity that in some way leads ultimately to the production of goods for commerce, is intended to be included within the terms of the statute. The law as it stood before the 1949 amendment was itself somewhat restricted, in that an employee, to come within the act, must be employed in a process *necessary* to the production of goods to have a covered status. As

2. It is to be noted that this definition was changed by an amendment to the statute in 1949. Prior to that amendment the relevant part of the definition was that an employee should be deemed engaged in the production of goods if such employee was employed "in [a] process or occupation necessary to the production" of goods.

stated by the Supreme Court in 10 East 40th Street Building, Inc., supra [325 U.S. 583, 65 S.Ct. 1229]:

"The series of cases in which we have had to decide when employees are engaged in an 'occupation necessary to the production' of goods for commerce has settled at least some matters. Merely because an occupation involves a function not indispensable to the production of goods, in the sense that it can be done without, does not exclude it from the scope of the Fair Labor Standards Act. Conversely, merely because an occupation is indispensable, in the sense of being included in the long chain of causation which brings about so complicated a result as finished goods, does not bring it within the scope of the Fair Labor Standards Act. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, [89 L.Ed. 118]; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, [89 L.Ed. 124]. In giving a fair application to § 3(j), courts must remember that the 'necessary' in the phrase 'necessary to the production' of goods for commerce 'is colored by the context not only of the terms of this legislation but of its implications in the relation between state and national authority.' Kirschbaum Co. v. Walling, supra, 316 U.S. 525, 62 S.Ct. at page 1121. For as was pointed out in Walling v. Jacksonville Paper Co., supra, 317 U.S. at page 570, 63 S.Ct. at page 336 we cannot 'be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states.' We must be alert, therefore, not to absorb by adjudication essentially local activities that Congress did not see fit to take over by legislation."

█ In connection with this language it must be further recognized that the amendment of 1949 made even more restrictive the definition of production of goods for commerce by changing the word "necessary" to the term "directly essential," and by adding also the words "closely related" to modify the word "occupation." Reference need not be made to Committee reports or other aids by way of legislative history for the court to draw the conclusion that the intent of Congress in the enactment of such amendments was to add to rather than detract from the class of employees to be considered engaged in local enterprises.

Obviously, an occupation might be necessary to the production of goods for commerce which is not closely related to production, and which even if closely related is not directly essential to production. Undoubtedly the employees who haul concrete to the dam site, those who clear the site, those who build the frames for the work and who actually pour the concrete or grade the earthen dam, are links in the "long chain of causation which brings about so complicated a result as finished goods."

The courts have consistently held, however, that those engaged in building a plant to be used for the manufacturing of goods do not even come within the more liberal requirement of the old statutory definition of "necessary to the production of goods." McDaniel v. Brown & Root, 10 Cir., 172 F.2d 466. As noted in footnote 4, page 471, of the opinion in that case by the Court of Appeals for the Tenth Circuit:

"The view that employees engaged in the original construction of buildings or facilities are not within the coverage of the Fair Labor Standards Act, even if the building or facility, when completed, will be used to produce goods for commerce, is supported, we think, by the action of the Supreme Court in Murphey v. Reed, 335 U.S. 865, 69 S.Ct. 105, [93 L.Ed. 410]. In that case the Court of Appeals for the Fifth Circuit, 168 F.2d 257, had held that employees of a contractor under a cost-plus-a-fixed-fee contract for the

original construction of a Navy camp for training construction battalions (Sea Bees) and a Naval Advance Depot at Gulfport, Mississippi, were not within the coverage of the Fair Labor Standards Act of 1938, and that certain other employees, performing work under a cost-plus-a-fixed-fee contract for the maintenance and operation of such facilities, were likewise not within the coverage of such Act, and reversed a decision of the District Court holding that both groups of employees were within the coverage of such Act. The Supreme Court granted certiorari and directed that the judgments below be vacated and the case remanded to the District Court with instructions to dismiss those causes of action involving solely construction work and to reconsider the remaining causes of action in the light of the decisions in the case of Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, [92 L. Ed. 1347]."

▮▮ We think this analysis of the Murphey case is correct and that there is thus Supreme Court approval of the many cases of similar import from the Courts of Appeals. See Reed v. Murphey, 5 Cir., 168 F.2d 257, affirmed as to construction workers in Murphey v. Reed, supra; Parham v. Austin Co., 5 Cir., 158 F.2d 566; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633; Kelly v. Ford, Bacon & Davis, 3 Cir., 162 F.2d 555. These cases recognize that the rule they apply is in accord with the Interpretative Bulletin No. 5 of the Wage and Hour Division itself [3] expressing the view that employees engaged in the original construction of buildings ultimately used for production of goods for commerce are not within the scope of the Act. These cases all arose under the earlier definition. Certainly no broader coverage has been intended by the amendment of 1949. Moreover, the construction workers here are at least one more step physically removed from production than are workers building facilities which are to be used for manufacturing or assembling for commerce. Here the end product of the construction work is the dam or, at most, the reservoir. These facilities then impound or contain water, which is then used in the manufacture of goods for commerce. As said in 10 East 40th Street Building, Inc., v. Callus, supra [325 U.S. 583, 65 S.Ct. 1229]: "Remoteness of a particular occupation from the physical processes (of production) is a relevant factor in drawing the line."

Cases which apply the "engaged in commerce" provision of the Act are of course not applicable here. Thus we can derive little guidance in construing the definition section relating to production of goods for commerce from Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745, and Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196.

The Court of Appeals for the Tenth Circuit and the Court in the Eighth Circuit in the two Chambers Construction Company cases, Mitchell v. Chambers Construction Co., 10 Cir., 214 F.2d 515, 517, and Chambers Construction Co. v. Mitchell, 8 Cir., 233 F.2d 717 expressed the view that construction workers engaged in repairing and enlarging a city's water supply were not engaged in original construction and that the definition of production of goods was broad enough to cover them. The first case did not need to, and did not, decide the issue, because it affirmed the lower court's refusal to grant an injunction, even though the court said "we are inclined to agree" with the Secretary's contentions. In the

---

3. Wage and Hour Interpretative Bulletin No. 5, Paragraph 12, Dec. 2, 1938, revised Nov. 1939, reads: "The question arises whether the employees of builders and contractors are entitled to the benefits of the Act. The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across state lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commerce. * * * "

second case the Court equated the new construction concept as to instrumentalities of commerce, Vollmer v. Mitchell, supra, with construction of facilities to be used for production of goods. With all deference to the court, it is clear that it did not support its conclusion by an analysis of the cases clearly recognizing the distinction between these two bases for coverage.

Applying, as we must, the declared intent of Congress to require a showing of something more clearly related to production and something more directly essential to production than had obtained under the earlier law, we cannot consistently hold that this construction work was a covered occupation because one closely related and directly essential to the production of goods for commerce. This would not only amount to a reversal of our earlier decisions, but would also amount to narrowing the class of excepted occupations in the face of a Congressional mandate to broaden it.

We conclude that the record discloses that the occupations here involved were not covered under the Act.

The judgment is reversed for entry of judgment for appellant.