James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

S. A. HEALY COMPANY, a corporation, Defendant.

Civ. A. No. 57 C 1799.

United States District Court
N. D. Illinois, E. D.
June 23, 1959.

Stuart Rothman, Sol., Harold C. Nystrom, Acting Sol., Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, Washington, D. C., George Faris, Chicago, Ill., for plaintiff.

Healy, Newby, Barrett & Healy, Chicago, Ill., for defendant.

ROBSON, District Judge.

The United States of America seeks to enjoin defendant from paying less than the statutory overtime wages to its employees[1] for hours over forty in a work week, pursuant to the requirements of the Federal Fair Labor Standards Act (29 U.S.C.A. § 201 et seq.). The defendant is a general contractor engaged in the construction of a new tunnel, which is to be a part of the Chicago Waterworks System. The parties have stipulated the facts and the cause is submitted for decision on briefs. The Court hereby adopts the stipulation of facts as its special findings of fact required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.

The stipulation of facts reveals that the 79th Street tunnel, which defendant by contract of July 8, 1956, undertook to construct for the sum of $7,852,050, is to be 4.6 miles in length; that it is to be a 16-foot tunnel to extend from the filter plant reservoir in Lake Michigan at 79th Street in Chicago to connections with the existing State Street and Stewart Avenue tunnels; that the tunnel is being constructed to provide greater amounts of water for the City's increased population and for industrial use, the industrial use being 30% of the daily average pumpage; that the defendant's employees worked on the tunnel from July 16, 1956, and will continue to work on it until at least December, 1959.

The complaint is predicated on the allegation that

"A substantial portion of the water supplied by the * * * water supply systems of the city of Chicago, has been and is being sold to and used by instrumentalities of interstate commerce, to facilitate such commerce, and has been and is being sold to and used by persons and firms engaged in the production of goods for interstate commerce, to facilitate such production of goods for interstate commerce."

The defendant's answer denies that its employees are engaged in commerce or in the production of goods for commerce,

1. The employees include laborers, watchmen, carpenters, crane operators, mucker operators, compressor operators, mining machine operators, shovel operators, dinky operators, hoist operators, janitors, timekeepers and clerks.

and accordingly contends the Act is inapplicable to its activities, which, on the contrary are alleged to be "limited wholly to the construction of new and distinct tunnels and shafts incident to a filtration plant."

The Fair Labor Standards Act prescribes rates of pay applicable to

"* * * employees * * * engaged in commerce or in the production of goods for commerce * * *." 29 U.S.C.A. § 206.

It defines "commerce" to mean

"* * * trade, commerce, transportation, transmission or communication among the several States or between any State and any place outside thereof." Sec. 203(b).

It defines "produced" thus:

"'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling,

transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." Sec. 203(j).

The wording of this last quoted provision was changed in 1949 by adding the words "closely related" and substituting the words "directly essential" for the word "necessary."

The Government quotes from the Report of the Majority of Senate Conferees at 95 Cong.Rec. 14875, indicative of Congressional intent, thus:

"* * * employees repairing, maintaining, improving or *enlarging* the buildings, equipment, or facilities of producers of goods are within the coverage of the Act whether they are employed by the producer of goods or by someone else who has undertaken the performance of particular tasks for the producer." (Emphasis ours.)

The Department of Labor has issued an Interpretative Bulletin, Subpart B, Part 776,[2] concerning the Construction In-

---

2. Sec. 776.23. "(a) * * * it is immaterial if the employer is an independent contractor who performs the construction work for or on behalf of a firm which is engaged in interstate commerce or in the production of goods for such commerce. * * *

"(c) All employees who are employed in connection with construction work which is closely or intimately related to the functioning of existing instrumentalities and channels of interstate commerce or facilities for the production of goods for such commerce are within the scope of the act. Closely or intimately related construction work includes the maintenance, repair, reconstruction, redesigning, improvement, replacement, *enlargement or extension of a covered facility*."

Sec. 776.26. "Unless the construction work is physically or functionally integrated or closely identified with an existing covered facility it is not regarded as covered construction because it is not closely enough related to or integrated with the production of goods for commerce. * * * Coverage of any con-

struction work, whether new or repair work, depends upon how closely integrated it is with, and how essential it is to the functioning of, existing covered facilities. Neither the mere fact that the construction is 'new construction' nor the fact that it is physically separated from an existing covered plant, is determinative. Moreover, the court decisions make it clear that *the construction project itself need not be actually employed in commerce or in the production of goods for commerce* during the time of its construction in order to be covered. Such factors may be considered in determining whether as a practical matter the work is directly and vitally related to the functioning of the covered facility but would not be decisive."

Sec. 776.27. "(a) (1) Covered production facilities within the concept of the act include mines * * * electric power and *water plants*. * * *

"(2) The repair or maintenance of a covered production unit is essential for its continued operation and has a close and immediate tie with the production of

dustry, which specifically states the principles concerning the coverage of the Act.

The stipulation of facts further reveals that the Chicago Water System is composed of 61 miles of water tunnels and 4,000 miles of water mains; that it has three districts: the North, Central and South, each with its own system of water cribs; that the Chicago area is 36 miles from north to south and 16 miles from east to west; that this water system serves not only Chicago, but 58 suburban communities and ten other consumers outside Chicago; that there are six cribs and one direct water intake at the South District filtration plant; that the water tunnels are dug through solid rock, 150 to 250 feet below the ground, and are conduits for "raw" water from the cribs and the filtration plant to the pumping stations, which in turn distribute the water through mains to the approximately half million consumer outlets and 44,000 fire hydrants; that the total average daily amount of water pumped in 1957 was 1,022,055,000 gallons, of which the South Water District pumped an average of 342,400,000 gallons daily to the 68th Street, Roseland and Western Avenue Pumping Stations; that 18% of the daily average pumpage of the Roseland and Western Avenue Pumping Stations supplies 38 companies, including packing houses, airplane engine manufacturers, automotive plants, farm equipment companies, beverage manufacturers, bakeries, surgical houses, machinery companies and railroads; that the 16-foot tunnel which defendant is building is horseshoe shaped and lined with concrete, and has 10-foot tunnel connections and accompanying shafts; that defendant employs about 205 employees in the work, and it is admitted that the employees work longer than a 40-hour week without overtime pay.

The stipulation of facts states in great detail the numerous and varied industrial firms served by the Chicago Water System. There can be no question that water is an essential part of the functioning of these companies in the production of goods for commerce, and to the instrumentalities engaged in commerce. The amount of water so consumed is very substantial although probably not the chief use of the water supplied by the Chicago System.

The abundance of litigation on the coverage of the Fair Labor Standards Act overtime pay provision demonstrates the difficulty of defining its precise limits. On an initial reading of the statute (subd. 203(j)) it seems clear and understandable, as are the several principles enunciated by all precedent. But the end result of the decisions, with a few exceptions, would refute this seemingly clear meaning.

■ The 1949 amendment, above noted, to that subsection, would corroborate a finding of Congressional intent to narrow further the scope of auxiliary occupations to be covered by the Act. The Court of Appeals for this Circuit so construed the effect of the amendment in Huke v. The Ancilla Domini Sisters, 267 F.2d 96.

goods for commerce. The act is also applicable to other construction which is an integral part of a covered production unit, such as the replacement, *enlargement*, reconstruction, *extension* or other improvement of the premises * * and other equipment. * * * Functionally such work is like maintenance and repair and is necessary for the continued, efficient and effective operation of the facility as a unit. * * *

"(b) The act applies to employees of public utilities which furnish * * * water to firms engaged * * * in manufacturing, processing, producing or mining goods for commerce. *Construction work performed upon the plant and facilities of such a utility is covered as in the case of any other covered production establishment.* The extension of the lines or other facilities of a covered utility for the first time to the premises of an establishment which produces goods for commerce would be subject to the act, because such extension is simply an improvement or *enlargement* of an existing covered utility."  (Emphasis ours.)

There had grown up in the cases a demarcation (which seems to have lost caste since the Supreme Court case of Mitchell v. C. W. Vollmer & Co., Inc., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196) between employments covered and those not covered, depending upon whether the work was "new" construction or simply enlargement, repairs, or maintenance. "New" construction was not covered. This distinction was evolved generally in cases involving transportation, or the "engaged in commerce" clause of the section under consideration, rather than the clause involving "production of goods for commerce," here under consideration, although it has infrequently been applied in these cases as well. The very recent and extremely pertinent decision of the Fifth Circuit Court of Appeals in H. B. Zachry Co. v. Mitchell, 1959, 262 F.2d 546, rejects the two relevant Chambers' cases [3] on the ground that the courts there failed to differentiate between these two bases of the Act's coverage. It is clearly evident that the Interpretative Bulletin heretofore quoted also makes no distinction between the two clauses of the section so far as contruction workers are concerned.

The following principles seem soundly established in Fair Labor Standards Act cases:

(1) Congress did not intend to make the scope of this Act coextensive with its power to regulate commerce.[4]

(2) But within its coverage, the Act is to be construed liberally to apply to the furthest reaches consistent with Congressional direction.[5] The policy of Congressional abnegation with respect to occupations affecting commerce is no reason for narrowly circumscribing the phrase "engaged in commerce." [6]

(3) The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be in practical effect a part of it rather than isolated, local activity.[7]

(4) The question whether an employee is engaged in commerce is determined by practical considerations.[8]

(5) Projects involving repair, extension, or relocation of existing facilities or instrumentalities of interstate commerce bring employees within the Act [9] as to those projects improving existing facilities.[10]

3. Mitchell v. Chambers Const. Co., 10 Cir., 1954, 214 F.2d 515; Chambers Const. Co. v. Mitchell, 8 Cir., 1956, 233 F.2d 717.

4. Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243; Walling v. Jacksonville Paper Co., 1942, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Huke v. The Ancilla Domini Sisters, supra.

5. Mitchell v. Lublin, McGaughy & Associates, supra; Walling v. Jacksonville Paper Co., supra; Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Overstreet et al. v. North Shore Corporation, 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Huke v. The Ancilla Domini Sisters, supra.

6. Mitchell v. Lublin, McGaughy & Associates, supra.

7. Mitchell v. Lublin, McGaughy & Associates supra; Mitchell v. C. W. Vollmer & Co., supra.

8. Mitchell v. C. W. Vollmer & Co., supra; Overstreet et al. v. North Shore Corporation, supra; 10 East 40th Street Building v. Callus, 1945, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806.

9. Mitchell v. Lublin, McGaughy & Associates supra; Mitchell v. C. W. Vollmer & Co., supra; Overstreet et al. v. North Shore Corporation, supra; Mitchell v. Chambers Const. Co., supra; Chambers Const. Co. v. Mitchell, supra; Tobin v. Pennington-Winter Const. Co., Inc., 10 Cir., 1952, 198 F.2d 334; Fitzgerald Const. Co. v. Pedersen, 1945, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Giannini v. Standard Oil Co., D.C.1955, 130 F.Supp. 740.

10. Mitchell v. C. W. Vollmer & Co., supra; Tobin v. Pennington-Winter Const. Co., Inc., supra.

(6) Mere separation of an occupation from the physical process of production does not preclude the application of the Act.[11]

(7) But remoteness of a particular occupation from the physical process is a relevant factor in drawing the line.[12]

(8) The applicability of the Act is dependent on the character of the employee's (not the employer's) work.[13]

In the precedent involving workers, the following are some of the instances where employees have been held covered by the Act:

Draftsmen, fieldmen and office workers for an architectural and engineering firm designing public and industrial projects and military air bases in and out of the state;[14] employees producing road surfacing material, $85\frac{1}{2}$% of which was used on interstate roads;[15] field workers and bookkeeper for irrigation company;[16] employees constructing new lock and canal in Louisiana, which would form part of Intercoastal waterway, an alternate route to the existing lock and canal;[17] employees repairing washed-out bridge abutments;[18] employees raising and lowering bridges and maintenance and repair of bridge;[19] employees clearing site for dam;[20] local delivery men completing interstate shipment of merchandise;[21] building maintenance employees whose tenants principally engaged in production of goods for commerce;[22] employees producing materials to be used in construction of causeway and of plant to make materials;[23] employees making new reservoir and chlorinator house for water system,[24] and employees constructing new segment as replacement in city's water supply.[25]

The following employees were held not within the Act:

Maintenance employees of typical metropolitan office (not manufacturers') building;[26] cooks for interstate railroad maintenance men;[27] and construction workers on new replacement dam for water system.[28]

The basic issue of this controversy seems to be whether the coverage as to construction workers making an enlargement of a facility, which coverage has been read into the Act's provisions relating to employees "engaged in commerce," is also to be read into the following clause pertaining to employees "engaged * * * in the production of goods for commerce" or "in any closely related process or occupation directly essential to the production thereof." As stated by the Zachry opinion the reasons for not so extending the Act's coverage are that the 1949 amendment to the latter clause seemingly makes it more restrictive than theretofore, and the fact that the latter clause is itself one more step removed from interstate activ-

11. 10 East 40th Street Building v. Callus, supra; Kirschbaum Co. v. Walling, supra.

12. 10 East 40th Street Building v. Callus, supra.

13. Walling v. Jacksonville Paper Co., supra; McLeod v. Threlkeld, supra; Kirschbaum Co. v. Walling, supra.

14. Mitchell v. Lublin, McGaughy & Associates, supra.

15. Alstate Const. Co. v. Durkin, 1953, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745.

16. Farmers Reservoir & Irrigation Co. v. McComb, 1948, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672.

17. Mitchell v. C. W. Vollmer & Co., supra.

18. Fitzgerald Const. Co. v. Pedersen, supra.

19. Overstreet et al. v. North Shore Corporation, supra.

20. Tobin v. Pennington-Winter Const. Co., supra.

21. Walling v. Jacksonville Paper Co., supra.

22. Kirschbaum Co. v. Walling, supra.

23. Archer v. Brown & Root, Inc., 5 Cir., 1957, 241 F.2d 663.

24. Mitchell v. Chambers Const. Co., supra.

25. Chambers Const. Co. v. Mitchell, supra.

26. 10 East 40th Street Building v. Callus, supra.

27. McLeod v. Threlkeld, supra.

28. Zachry Co. v. Mitchell, 5 Cir., 262 F.2d 546.

ity than employees "engaged in commerce" covered by the first clause. Or, to put it more specifically, a construction worker adding a new segment to a road is but one step removed from interstate transportation facility, whereas the one adding a new segment to a water system, is two steps removed, i. e., the water is transported therethrough to the facility which in turn uses it for interstate products.

As all the decisions repeatedly state, the line is a difficult one to draw. However, the precedent has so frequently included construction workers making repairs or enlargements and not simply completely new constructions into the coverage of the Act, that the Zachry decision does not represent the weight of

29. Chambers Const. Co. v. Mitchell, 8 Cir., 1956, 233 F.2d 717.

"The Company is engaged in the general contracting business, specializing in construction and reconstruction work upon municipal water and sewer systems * * *. [T]he company contracted with the City * * * for the construction of a segment of the city's water supply main crossing the Big Blue River. This *new segment* (a 16-inch pipe 221 feet long) *was intended to be a replacement for a similar segment* which, for reasons of safety and security, had to be abandoned. The contract also involved certain piping changes and valve installations. Work on the proposed replacement took place while the old main was still being used, the plan being that *the new line would be interspliced on completion* with a minimum of interference with the city's water supply intake.

"*The water* carried by the supply main at the time in question was used by the City * * * and *was sold by the city to its customer water users, some of which were railroads* engaged regularly and continuously in interstate commerce. *Other users included industrial firms using the water in various ways incident to manufacture of their products, which products were distributed and sold in interstate commerce.*" At pages 719–720.

"The trial court, following the so-called 'new construction rule,' stated: ' * * * that the construction of an entirely new facility, * * * a highway, which after construction is utilized for interstate commerce is not within the reach of the Act.'

authority. This conclusion is substantiated by the Senate Conferees Report intimating that employees making enlargement of facilities are within the coverage of the Act, and by the fact that the Secretary of Labor has so determined in his Interpretative Bulletin. If his interpretation is in conflict with the statute, it would be ineffectual. In view of the oft-repeated rule that the Act is to be construed liberally to apply to the furthest reaches consistent with Congressional direction, doubt is resolved in favor of the coverage of these employees by the Act. Supportive of this conclusion are the two Chambers decisions, quotations from which are set forth below.[29]

An injunction will issue in accordance with the prayer of the complaint.

"But the court concluded:
"'But the improvements in those cases are not comparable to replacement of the river crossing in the * * * water main. *The erection* which was made under the * * * contract *was not susceptible of use by itself or otherwise than through its incorporation into the long water carrying main in replacement of the former river crossing segment* * * *. The so-called 'new' segment is a replacement or repair designed only for that purpose and of no value or service otherwise * * *." At page 721.

"'In our opinion, *the Vollmer decision infers that the 'new construction rule' is not applicable to the repair or replacement of existing facilities. This is not a change in the law. It has been true ever since the F.L.S.A. was passed in 1938.*'

'Nevertheless, without considering whether the Vollmer language does change or eliminate the 'new construction rule', as contended by appellants, it is obvious that the type of 'replacement-improvement' construction involved in that case is not in all respects similar to a 'replacement' construction such as we have here * * *." At page 722.

Mitchell v. Chambers Const. Co., 10 Cir., 1954, 214 F.2d 515.

"The material facts are that the appellee entered into a contract with the City of Cheyenne, Wyoming, for the *construction of a reservoir and chlorinator house, which, when completed would augment the city's water system.* In addition to the concrete reservoir and a chlorinator house, the contract called for

the construction of a connecting pipe line from existing wells and reservoirs to the new reservoir and through the chlorinator house * * *. The new reservoir and chlorinator house were located about five and one-half miles from the city in a pasture, no portion of which had ever been connected or used as a part of the city's water system * * *.

"The city furnishes large quantities of water to employers engaged in commerce and in the production of goods for commerce. And, we know that employees engaged in an occupation directly essential to the production of goods for commerce are themselves engaged in the production of goods for commerce. (Citing cases.) We also know that workmen engaged in repairing, replacing, *enlarging* or improving an existing interstate facility are covered by the Act as employees engaged in commerce * *. On the other hand, it is equally plain

that employees engaged in the original construction of a project or facility not yet dedicated to the channels of commerce or to the production of goods for commerce are not within the coverage of the Act, even though the facility or project, when completed, will be in the channels of interstate commerce or utilized in the production of goods for commerce. The question in each case is governed by the facts * * *.

"The appellant earnestly and plausibly contends that the project to augment the city's water supply was no more than an addition to or an enlargement of an existing water system to meet its expanding needs, and the fact that it was physically removed from the existing system and was not immediately connected to the distribution system as an integral part of it, was immaterial. And, we are inclined to agree." At page 516 (Emphasis ours. )